376 A.2d 323

RHODE ISLAND HOSPITAL TRUST NATIONAL BANK,
*Executor, et al. vs.* HELEN BOITEAU *et al.*

AUGUST 1, 1977

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J.    This is essentially a suit in equity to quiet title to certain real estate brought by the Rhode Island Hospital Trust National Bank (the bank) as executor under the will of Hazel Moses Petrin and by Thomas N. and Geraldine C. Comella, who purchased a portion of the real estate in question from the bank. The defendants-appellants are the decedent's three sisters, Doris Issa, Helen Boiteau, and Mary Cassidy. The trial justice granted the bank's motion for summary judgment, and the sisters have appealed. Having concluded that there was no error, we affirm the judgment below.

As we have said innumerable times before, when a trial justice is passing on a motion for summary judgment, the only question before him or her is whether there is a genuine issue as to any material fact which must be resolved. *O'Connor* v. *McKanna*, 116 R.I. 627, 359 A.2d 350 (1976). If an examination of the pleadings, affidavits, admissions, answers to interrogatories, and other similar matters, viewed in the light most favorable to the opposing party, reveals no such issue, then the suit is ripe for summary judgment. *Harold W. Merrill Post No. 16 Am. Legion* v. *Heirs-at-Law, Next of Kin and Devisees of Smith*, 116 R.I. 646, 360 A.2d 110 (1976); *O'Connor* v. *McKanna, supra; Kurland Auto Leasing, Inc.* v. *I.S.K. of Massachusetts, Inc.*, 111 R.I. 730, 306 A.2d 839 (1973).

With these general principles in mind, we turn now to the record before us which, in our opinion, makes this an appropriate instance for granting the motion. Because the circumstances surrounding the suit and the record itself are rather confusing, we shall go into some detail. For ease and simplicity we shall refer to the parties by their first names and proceed chronologically.

In 1950 Henri Petrin owned real estate which is situated partly in the town of Burrillville and partly in the town of Glocester and located on both the east and west sides of Cooper Hill Road. The eastern parcel was approximately 3.5 acres, and the western parcel was in excess of 25 acres. Shortly before Henri married Hazel, he deeded the property to Hazel and himself as joint tenants. Approximately 6 years later Henri died. In 1960 Hazel apparently deeded all the property to her father, Louis Moses, who in turn deeded the property back to Hazel and himself as joint tenants. Later, in 1964 he executed a quitclaim deed as to all the property, naming Hazel as grantee. This deed was duly recorded and purports to have been executed in Woonsocket (the 1964 deed). Approximately 6 years later Hazel deeded 1.69 acres on the westerly side of Cooper Hill Road to her sister, Helen.

About a month later Hazel died, leaving a will in which she devised and bequeathed all her property, including the Cooper Hill Road real estate, in trust for her two minor sons, naming Helen guardian of one and Doris guardian for the other.

Within a year of Hazel's death, the bank determined that the eastern parcel should be sold and accordingly had the title searched. During the search a cloud on title appeared when it was discovered that the 1964 deed had an acknowledgment which indicated that Louis executed the deed in Woonsocket even though he was at that time actually living in Syria. Discussions between the bank and the sisters led to Louis' return from Syria, apparently with the hope that the cloud could be removed and the title cleared.

Thereafter, there were several meetings involving Louis, his daughters, and the bank. These meetings are the cause of some dispute. The bank has claimed that on October 29, 1971, there was a meeting in Woonsocket attended by Louis, his wife Rose, and daughters Helen, Mary, and Doris, a bank trust officer, and the attorney for the estate. The bank and the attorney, in affidavits supplied in support of the summary judgment notion, aver that at the meeting Louis and his wife, for the consideration of $3,000, knowingly and willingly executed a deed dated October 29, 1971, in which they quitclaimed all their interest in the property to the bank. This deed was not recorded until May 1972.

However, in November 1971 Louis executed a deed (the November deed), in which he conveyed to his three daughters all of his interest in the Cooper Hill Road property except "the two (2) said houses on said parcels and the land thereunder," which he said he was granting to the bank. This deed was duly recorded on November 19, 1971. In May 1972 the bank sold the eastern parcel to the Commellas. When the bank's deed to the Commellas was being recorded, it was discovered that Louis' deed to his daughters was already on record.

In January 1973 the bank instituted this suit and alleged that Helen, Doris, and Mary had fraudulently arranged with Louis to convey the land to them in violation of Helen's and Doris' fiduciary duty as guardians of their nephews' estates. The sisters denied these allegations and argued that their father, Louis, had been defrauded and forced to sign the quitclaim deed. Additionally, Helen produced a copy of Hazel's deed to her covering the 1.69-acre parcel. In time Louis intervened as a party plaintiff and sought to set aside both previous deeds, claiming that everyone, including the bank and his daughters, had misled him.

The bank moved for summary judgment on February 24, 1975 and filed appropriate affidavits attesting to the meetings and the corrective deed. Louis neither joined in nor opposed the motion at that time. Helen, Mary and Doris filed opposing affidavits, in which they claimed that their father had been defrauded. Sometime thereafter Louis and the bank apparently reached an agreement because on June 17, 1975 a document entitled "Judgment" was entered in the record. This document bears the signatures of the trial justice, Louis' attorney, the attorney for the bank, and the Comellas. This judgment, which followed the grant of the bank's motion for summary judgment, ratifies Louis' quitclaim deed to the bank and cancels his November deed to the daughters.

As noted earlier, the question before us is whether the trial justice erred when he determined there was no issue of material fact to be resolved and granted the bank's motion for summary judgment. Helen, Mary, and Doris argue that because their father was defrauded by the bank during the course of their meetings culminating on October 29 when he was forced to capitulate, there most certainly is an unresolved factual issue: specifically, the validity of the deed. The ready response to their argument is that, apart from the fact that their father, Louis, had capitulated and has agreed that his October deed was valid, it is well-established that claims such as fraud or duress must be "brought by the one

imposed upon or by some duly appointed person acting in his behalf." *Dolan* v. *Dolan*, 78 R.I. 12, 20, 78 A.2d 367, 371 (1951). Here the daughters, in seeking to defeat the summary judgment motion, are raising a claim which is personal to their father, and it is obvious that they are not acting in a representative capacity. Thus, their claim is totally irrelevant and cannot be used to defeat the bank's motion.

Secondly, all the parties agree that Helen, Mary, and Doris had actual knowledge of Louis' corrective deed to the bank, even though the deed was belatedly recorded. Because the corrective deed is valid and the daughters knew of its existence, the November deed, although recorded first, cannot take precedence. A deed, if delivered, is valid and binding against those who have knowledge of it even if not acknowledged or recorded. *Bullock* v. *Whipp*, 15 R.I. 195, 2 A. 309 (1885); G.L. 1956 (1969 Reenactment) §34-11-1; *see also Sundlun* v. *Volpe*, 63 R.I. 441, 9 A.2d 41 (1939).

Finally, the status of the 1.69-acre deed to Helen, or indeed its relevancy to this proceeding, does not seem to have been determined below. However, Helen has raised no argument pertaining to that deed on appeal. Since the point was not raised, we deem any argument on it waived. *Salk* v. *Alpine Ski Shop, Inc.*, 115 R.I. 309, 342 A.2d 622 (1975); *Walmac Co.* v. *Zurich Ins. Co.*, 114 R.I. 410, 333 A.2d 686 (1975).

The defendants' appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Lavine & Sutherland, Robert Hope Larder*, for plaintiffs.

*William J. Peotrowski, Jr., Anthony DeSimone*, for defendants.